UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

TiQuion CLAY
    Plaintiff

                    CASE NO. _____ 16-612-SMY _____

    V.


KiMBERLY BUTLER, RiCHARD FERRELL,
ROBERT DIXON, BRANDON ANTHONY,
MARViN BOCHANTIN, KENt BROOKMAN,
JASON HART, LiNDA CARTER,
SHERRY BENTON, SALVADOR GODINEZ

    DEFENDANTS


CiViL Rights Complaint 42 U.S.C. 1983


(1.)

I. Plaintiff: Tiquion Clay # R-27703  P.O. Box 1000 Menard, Il. 62259 Menard Correctional Center.

II Defendants:

#1.  Kimberly Butler - Warden/CAO - Menard.  P.O. Box 1000 Menard, Il. 62259  State Employee

#2.) Richard Ferrell - Officer (Adjustment Committee) State Employee P.O. Box 1000 Menard, IL 62259

#3) Robert Dixon - Officer - (Adjustment Committee) State Employee P.O. Box 1000 Menard, Il. 62259

#4.) Brandon Anthony - Officer (Internal Affairs Ofc.) State Employee P.O. Box 1000 Menard, Il 62259

#5.) Marvin Bochantin - Counselor/Grievance Officer - State Employee P.O. Box 1000 Menard, Il. 62259

#6) Kent Brookman - Officer - (Adjustment Committee) State Employee P.O. Box 1000 Menard, Il 62259

#7) Jason Hart - Officer (Adjustment Committee) State Employee P.O. Box 1000 Menard, Il 62259

(2.)

#8 – Linda Carter – Counselor/Grievance officer – State employee P.O. Box 1000 Menard, Ill. 62259

#9 – Sherry Benton – Review Board Member State employee 1301 Concordia Court P.O. Box 19277 Springfield, Ill. 62794-9277

#10.) Salvador Godinez – Ex-I.Doc Director State employee P.O. Box 19277 Springfield, Ill. 62794-9277

Previous Lawsuits:

(3.)

GRIEVANCE PROCEDURE:

Plaintiff EXHAUSTED ALL His AVAILABLE REMEDIES.

He FiLED GRIEVANCES; THEY WEREN'T RESPONDED TO IN A TIMELY FASHION SO HE SENT THEM TO THE APPROPRIATE PEOPLE. SOME GRIEVANCES WERE NEVER RESPONDED TO AT ALL SO HE WROTE LETTERS IN AN ATTEMPT & EFFORT TO GET A RESPONSE BUT THEY WERE NEVER RESPONDED TO SO HE FORWARDED THEM TO THE NEXT STEP IN THE PROCESS; SO HE EXHAUSTED HIS REMEDIES AS TO WHAT REMEDIES WERE MADE AVAILABLE TO HIM. HE CAN ONLY SEND THEM HIS GRIEVANCES & CAN'T MAKE THEM RESPOND TO THEM & IF HE DOES NOTHING TO SHOW HE TRIED TO EXHAUST THE GRIEVANCES THEN HE DIDN'T TRY ~~ENOUGH~~ HARD ENOUGH.

Statement of Claim: Claim #1 - Due Process

1.) Plaintiff was sent to segergation under investigation status which is different from disciplinary segergation status because under investigation he is entitled to have his property - such as T.v., Radio, Legal Documents, writing utencils, but he wasn't given any of those things when he got to Seg.

2.) Allegedly while searching thru plaintiffs property the internal Affairs unit officer Brandon Anthony he claims to have found a photo album with 21 security threat group - (STG.) letters (kites) ; that the photo album was allegedly found in plaintiffs correspondence box.

3.) Defendant Anthony stated in his report (Exhibit-A) that he searched plaintiff's property ; when he claims to have found the alleged contraband items (21 kites) ; that North 2 property officer Nagel #3963 was the one who witnessed him shake down plaintiff's property ; find the alleged contraband that was supposedly found.

4.) The inmate Rule book ; administrative directive clearly states that all shake downs must be reported ; all contraband siezed must also be reported. This is

USUALLY DONE BY THE SEARCHING OFFICER ISSUING A SHAKE DOWN SLIP THAT CLEARLY STATES WHAT WAS SHOOK DOWN? WHEN IT WAS SHOOK DOWN? WHO SHOOK IT DOWN?, WHO WITNESSED THIS SHAKE DOWN?, WHAT (IF ANY) CONTRABAND WAS FOUND?, WHAT WAS DONE WITH THIS SAID CONTRABAND THAT WAS FOUND? THIS IS PROPER PROCEDURE FOR ALL OFFICERS TO FOLLOW WHEN CONDUCTING ANY & ALL SHAKE DOWNS.

5.) DEFENDANT ANTHONY NOR OFC. NAGEL WROTE OR ISSUED PLAINTIFF A SHAKE DOWN SLIP FOR WHEN THEY CLAIMED TO HAVE SHOOK DOWN HIS PROPERTY, NOR FOR THE ALLEGED CONTRABAND THAT THEY CLAIMED TO HAVE FOUND & CONFISCATED FROM HIS PROPERTY.

6.) PLAINTIFF WAS WRITTEN A DISCIPLINARY TICKET THAT STATED THAT THE ITEMS FOUND IN HIS PROPERTY (EVIDENCE) WAS THE SOLE REASON FOR THE CHARGES LISTED ON THE DISCIPLINARY REPORT. (EXHIBIT-A).

7.) PER THE ADMINISTRATIVE DIRECTIVE (RULES, POLICIES & PROCEDURES OF IDOC) ALL EVIDENCE SHALL BE PRESENTED TO THE ADJUSTMENT COMMITTEE FOR THEM TO LOOK AT THE EVIDENCE & DETERMINE IF THIS EVIDENCE CAN SUBSTANTIATE THAT THE CHARGES ARE PROPER & JUST...

8.) THE ADJUSTMENT COMMITTEE OF FERRELL & DIXON NEVER LOOKED AT THE ALLEGED EVIDENCE THAT DEFENDANT ANTHONY CLAIMS HE FOUND IN PLAINTIFF'S PROPERTY BOX IN DIRECT VIOLATION OF THE POLICY.

9.) FERRELL & DIXON DELIBERATELY IGNORED THE RULES CONCERNING THE PRODUCTION OF EVIDENCE BEING PRODUCED AT THE ADJUSTMENT COMMITTEE HEARING & THEY JUST TOOK THE WORD OF THE OFFICER THAT WROTE THE DISCIPLINARY TICKET THAT THE EVIDENCE ALLEGEDLY FOUND WAS GANG RELATED MATERIAL. THEY NEVER LOOKED AT IT.

10.) IN THEIR REASON GIVEN AS TO WHY THEY FOUND PLAINTIFF GUILTY OF THE ALLEGED CHARGES - "BASIS FOR DECISION" (EXHIBIT-B) BASED ON PLAINTIFF'S PROPERTY BEING ESCORTED TO & SEARCHED IN THE NORTH 2 PROPERTY ROOM WHILE SEARCHING PLAINTIFF'S PROPERTY R/O (REPORTING OFFICER) FOUND ONE PHOTO ALBUM THAT HAD 21 STG RELATED KITES IN IT. THE INTEL UNIT VERIFIED THE MATERIAL AS GANGSTER DISCIPLE. AN ID NUMBER WAS FOUND ON PAPERS & PER MENARD INTEL UNIT THEY CONFIRMED THAT THE NUMBER BELONGS TO INMATE BROWN. DOC 0300 INDICATES PROPERTY WAS CONFISCATED.

11.) NO WHERE IN THERE REASONS (BASIS FOR DECISION) DO DEFENDANTS SPEAK OF THEM CONFIRMING THE EVIDENCE OR LOOKING AT THE KITES OR SUBSTANTIATING THE CHARGES WERE LEGIT... FERRELL & DIXON TOOK INTEL UNIT OFFICER ANTHONY'S WORD AS TO WHAT WAS FOUND, WHERE IT WAS FOUND, HOW IT WAS FOUND & WHAT IT CONTAINED.

12.) PER THEIR OWN RULES THE ADJUSTMENT COMMITTEE ISN'T SUPPOSE TO JUST TAKE THE WORD OF THE OFFICER WHO WROTE THE DISCIPLINARY TICKET & THATS WHAT FERRELL & DIXON DID.

13.) AS A RESULT OF FERRELL & DIXON ONLY TAKING THE WORD OF OFC. ANTHONY PLAINTIFF WAS FOUND GUILTY & SENTENCED HIM TO 6 MONTHS C-GRADE, SEGREGATION, COMMISSARY RESTRICTIONS, & CONTACT VISIT RESTRICTION.

14.) PLAINTIFF ASKED TO SEE THE ALLEGED EVIDENCE BEING PRESENTED & OR USED TO DETERMINE HIS GUILT & HE WAS DENIED BY FERREL & DIXON

15.) PLAINTIFF PRESENTED A WRITTEN STATEMENT TO THE ADJUSTMENT COMMITTEE TO STATE WHY HE WASN'T GUILTY & ON THE RECORD OF PROCEEDINGS IT STATES PLAINTIFF GAVE

A WRITTEN STATEMENT BUT THE STATEMENT WASN'T MADE A PART OF THE ACTUAL RECORD & IT SHOULD HAVE BEEN BECAUSE IT IS A PART OF THE RECORD OF PROCEEDINGS.

16.) HAD MENARD FOLLOWED THE ADMINISTRATIVE DIRECTIVE THAT SAYS THE WARDEN SHALL APPOINT AN ADJUSTMENT COMMITTEE HEARING OFFICER INVESTIGATOR TO CHECK INTO EACH DISCIPLINARY TICKET TO MAKE SURE THAT THE CHARGES WERE SUBSTANTIATED, THAT IF WITNESSES WERE REQUESTED THAT THEY WERE CALLED & IF EVIDENCE WAS BEING USED THAT INMATES WOULD GET TO SEE THAT EVIDENCE SO THEY CAN DEFEND IT OR ATTEMPT TO.

17.) MENARD/WARDEN BUTLER REFUSES TO APPOINT A HEARING INVESTIGATOR OFFICER & THIS ALLOWS THE COMMITTEE TO DO WHATEVER IT WANTS TO DO & FIND GUYS GUILTY... EVEN WHEN THE CHARGES CAN'T BE SUBSTANTIATED OR THE TICKET IS IMPROPERLY WRITTEN.

18.) PLAINTIFF WROTE A GRIEVANCE CONCERNING THE DATES ON HIS TICKET BEING WRONG (EXHIBIT-C) THE DATE HIS SITUATION HAPPEND WAS 7/15/14 BUT THE TICKET/SUMMARY HAD 7/3/14 LISTED AS THE DATE PLAINTIFF WAS SENT TO SEGREGATION & 7/21/14 WAS THE DATE THAT THE TICKET

WAS HEARD.

19.) Plaintiff stated in his grievance, that if he had got placed in segregation on 7/3/14 & his ticket heard on 7/21/14 then the ticket should be thrown out because it went pass the 14 day deadline that the Adjustment committee had to hear his ticket.

20.) The Grievance officer Linda Carter insted of addressing all the issues of plaintiff's grievance about this improperly written ticket & how the committee violated his due process rights, she addressed only what she wanted to & insted of dismissing the ticket because the charges were not confirmed or substantiated along with the alleged evidence, she sent the ticket back to internal affairs officer Anthony to rewrite with the right dates & reheard by the Adjustment committee. (Exhibit- D)

21.) The Grievance officers report (Linda Carter) was signed off on by warden Butler on 10/14/14 (Exhibit-D) stating that the report/ticket be remanded back to intel unit (internal affairs) & rewritten & also reheard with the correct information.

22.) This process of rehearing & rewriting the ticket is a wiping the slate clean process, so whatever happend before with this ticket is wiped away & the whole process is started over... with plaintiff being held in temperary confinement waiting on the writing of the ticket, the serving of the ticket & the results from the hearing of the ticket.

23.) Defendants (Butler)/Adjustment Committee & officer writing the ticket (Anthony) all know that while an inmate is being held in temperary confinement they have a timeframe to do things or they violate plaintiffs due process rights. They have (3) days to write a disciplinary ticket, they have (8) days to serve this ticket on plaintiff & (14) days for the adjustment committee to hear this ticket.

24.) Plaintiff's ticket wasn't rewritten until 10/21/14.

25.) The warden (Butler) signed off on the rehearing & rewritten ticket on 10/14/14 & so from that date plaintiff was officially being held in temperary confinement status, & the clock was ticking for defendants to write, serve & hear plaintiff's ticket & they (Anthony) took (8) days to write the ticket (10/14/14 is 1st day) & (9) days to serve the ticket on plaintiff in direct violation of their own rules designed to protect the due process rights of

ALL INMATES BEING HOUSED IN IDOC.

26.) Butler refuses to appoint a hearing investigator to make sure issues concerning the due process rights of inmates are protected & the Adjustment Committee abides by the rules put in place for them to follow, so without a hearing investigator in place Butler knows that the process is not being properly processed/provided to inmates such as plaintiff.

27.) The rewritten ticket was reheard on 10/28/14 & the reason that it was ordered to be rewritten & reheard is because the Adjustment Committee listed the date of the offense as happening on 7/3/14 & it didn't happen until 7/15/14 so plaintiff pointed this out as he stated that if the incident took place on 7/3/14 & his ticket wasn't heard until 7/21/14 then the 14 day deadline that defendants have to hear the ticket has been violated & the ticket should be dismissed & also if the incident happend on 7/3/14 as it was listed & the ticket wasn't written until 7/15/14 then that violates the (3) day deadline defendants have (Butler, Anthony) have to write the ticket (thats 12 days) & (8) days to serve plaintiff the ticket & for those reasons the ticket was thrown out & rewritten & ordered to be reheard.

28.) ON 10/28/14 THE REWRITTEN TICKET WAS REHEARD BY THE ADJUSTMENT COMMITTEE OF BROOKMAN & HART.

29.) PLAINTIFF ASKED IF HE COULD SEE THE ALLEGED EVIDENCE THAT'S SPOKEN OF IN THE TICKET THAT ANTHONY WROTE & IF HE WAS NEVER GIVEN A SHAKE DOWN SLIP CAN THAT EVIDENCE BE USED STILL?

30.) PLAINTIFF WAS TOLD BY BROOKMAN & HART THAT HE COULD NOT & WOULD NOT BE LOOKING AT THE EVIDENCE THAT'S WRITTEN IN THE TICKET THAT DEFENDANT ANTHONY CLAIMS TO HAVE FOUND IN PLAINTIFFS PROPERTY.

31.) PLAINTIFF WAS TOLD BY BROOKMAN & HART THAT ANTHONY DIDN'T HAVE TO ISSUE HIM A SHAKE DOWN SLIP EVEN THOUGH THEY SEARCHED HIS PERSONAL PROPERTY & CORRESPONDENCE BOXES & CONFISCATED CONTRABAND FROM HIM... & YES THEY CAN USE THE CONFISCATED CONTRABAND WITHOUT GIVING PLAINTIFF A SHAKE DOWN SLIP.

32.) PLAINTIFF ASKED BROOKMAN & HART IF HE CAN'T SEE THE EVIDENCE, THEN DID THEY ACTUALLY SEE IT & IF SO, COULD THEY PLEASE DESCRIBE THE ALLEGED KITES FOR HIM SO HE CAN TRY TO GET A FEEL FOR WHAT HE'S DEFENDING HIMSELF FROM... BOTH BROOKMAN & HART TOLD PLAINTIFF THAT THEY DIDN'T SEE

NONE OF THE EVIDENCE ; THAT THEY DIDN'T HAVE TO SEE IT BECAUSE OFFICER ANTHONY STATED THAT HE FOUND EVERYTHING IN YOUR BOXES (PROPERTY ; CORRESPONDENCE) ; THE EVIDENCE WAS CONFIRMED TO BE STG MATERIALS BY THE INTEL UNIT. THIS ISN'T HOW THE PROCESS IS SUPPOSED TO GO.

33.) PLAINTIFF TOLD BROOKMAN ; HART THAT ITS NOT FAIR TO HIM THAT THEY ARE TAKING OFFICER ANTHONY'S WORD THAT HE FOUND 21 KITES IN HIS PROPERTY ; THEN THEY (BROOKMAN ; HART) DON'T EVEN LOOK AT THE KITES OR ALLOW HIM (PLAINTIFF) TO VIEW THE KITES TO SEE IF THEY ARE WHAT ANTHONY CLAIMS THAT THEY ARE... BROOKMAN ; HART LET PLAINTIFF KNOW THAT THIS IS HOW ITS DONE IN MENARD.

34.) BROOKMAN ; HART LET PLAINTIFF KNOW THAT THEY WERE ONLY SUPPOSE TO REHEAR THIS OLD TICKET ; GIVE HIM THE SAME SENTENCE THAT HE GOT BEFORE.

35.) THE REWRITTEN TICKET WAS SUPPOSE TO BE REHEARD ; PLAINTIFF GIVEN A CHANCE TO PROVE HIS INNOCENCE, BUT THIS ISN'T WHAT TOOK PLACE. BROOKMAN ; HART'S BASIS FOR DECISIONS WAS A DELIBERATE DISREGARD OF PLAINTIFF'S DUE PROCESS BECAUSE THEY STATE THAT THEIR REASON WAS "UPHOLD ORIGINAL DECISION" BASED ON INMATE CLAY PROPERTY WAS ESCORTED TO ; SEARCHED IN

THE NORTH 2 PROPERTY ROOM. WHILE SEARCHING INMATES PROPERTY R/O (REPORTING OFFICER - ANTHONY) FOUND PHOTO ALBUM THAT HAD 21 STG. KITES IN IT. MATERIAL WAS VERIFIED BY MENARD C.C. INTEL UNIT (INTERNAL AFFAIRS UNIT - ANTHONY). (EXHIBIT-E) THE BASIS FOR DECISION THAT BROOKMAN & HART GIVE FOR WHY THEY FOUND PLAINTIFF GUILTY (EXHIBIT-E) IS THE EXACT SAME BASIS FOR DECISION THAT FERRELL & DIXON GIVE FOR THEIR REASON FOR FINDING PLAINTIFF GUILTY (EXHIBIT-B).

36.) THESE ARE TWO DIFFERENT ADJUSTMENT COMMITTEE'S BUT YET THEY GIVE THE EXACT SAME REASONS AS FOR HOW THEY CAME TO THE CONCLUSION THAT PLAINTIFF WAS GUILTY OF THE CHARGES THAT WERE WRITTEN UP IN HIS TICKET. THAT IS NOT LEGALLY OR LOGICALLY POSSIBLE FOR (4) DIFFERENT PEOPLE TO COME UP WITH THE THE EXACT SAME WORDS TO FIND PLAINTIFF GUILTY. THATS A VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS.

37.) PLAINTIFF RECEIVED HIS SUMMARY FOR THE REHEARING OF THE REWRITTEN TICKET (EXHIBIT-E) & THE DATE LISTED AS WHEN THE INCIDENT HAPPEND IS 7/3/14. THIS IS THE EXACT SAME DATE THAT WAS PLACED ON THE LAST SUMMARY THAT WAS ORDERED TO BE REWRITTEN & REHEARD, & IT WAS NOT SIGNED BY BUTLER, AS IS THE RULE.

38.) PLAINTIFF WROTE A GRIEVANCE APPEALING THE DECISION BY

THE ADJUSTMENT COMMITTEE OF BROOKMAN & HART (EXHIBIT-F) & HE ALSO WROTE SEVERAL MORE CONCERNING THIS ISSUE (EXHIBIT-G-H) TO NOTIFY THE GRIEVANCE OFFICERS LINDA CARTER & MARVIN BOCHANTIN THAT HIS DUE PROCESS RIGHTS WERE VIOLATED BY THE ADJUSTMENT COMMITTEE HEARING THAT WAS ORDERED TO REHEAR THE REWRITTEN TICKET SO THAT THEY COULD SEE THAT THE EXACT SAME VIOLATIONS OCCURED & SUBJECT PLAINTIFF TO A DUE PROCESS VIOLATION AGAIN... DENYING HIM A FAIR OPPORTUNITY TO HAVE HIS DISCIPLINARY TICKET HEARD IN A FAIR PROCESS.

39.) PLAINTIFF SENT THE GRIEVANCES TO THE GRIEVANCE OFFICER IN A TIMELY FASHION & IT WAS RESPONDED TO BY GRIEVANCE OFFICER - BOCHANTIN (EXHIBIT-I) WHO SAW THE IMPROPER ASPECT THAT PLAINTIFF POINTED OUT IN HIS GRIEVANCES & WHICH WAS THE DIRECT CAUSE/REASON THAT GRIEVANCE OFFICER CARTER ORDERED THAT THE GRIEVANCE BE WON BY PLAINTIFF & THAT HIS DISCIPLINARY TICKET BE REWRITTEN & REHEARD... & DEFENDANT BOCHANTIN DESCRIBED THE IMPROPER ASPECT ISSUE (NATURE OF GRIEVANCE - IDR DATED 7/3/15 ISSUED BY C/O ANTHONY) AT THE BEGINING OF HIS REPORT... & HE DISREGARDED IT.

40.) Defendant Bochantin can't say He didn't see this improper date of 7/3/15 because its listed at the very first line of the grievance officer's report.

41.) Defendant can't say that He didn't know that 7/3/15 was a wrong date for when the ticket was written because He states "grievance #40-8-14 IDR dated 7/3/14 issued was remanded back to Intel per grievance officer (Carter) for a date clerical error to be fixed. (Exhibit - I)

42.) On the Adjustment Committee final summary report from 7/21/14 with Defendants Ferrell & Dixon (Exhibit - B) it lists 7/3/14 as the date of the incident & this decision was voided & it was ordered that the ticket be rewritten & reheard because of this improper issue.

43.) On the Adjustment Committee final summary report from 10/28/14 with Defendants Brookman & Hart (Exhibit - E) it lists 7/3/14 as the date of the incident & the incident didn't happen that day. This is the rewritten ticket that was rewritten because of having the wrong date of the incident listed as 7/3/14 & not 7/15/14 when it actually happend, so this ticket & the results should have been voided like the 7/21/14 (Exhibit - B) results were

DONE.

44.) BOCHANTIN DISREGARDED PLAINTIFFS DUE PROCESS RIGHTS BY DELIBERATELY IGNORING THE PROCESS.

45.) PLAINTIFF'S TICKET WAS DISMISSED & ORDERED TO BE REWRITTEN & RE-HEARD... DEFENDANT BOCHANTIN STATES THAT WITH THIS PROCESS DESIGNED TO CORRECT THE IMPROPERLY WRITTEN TICKET THAT PLAINTIFF ISN'T ENTITLED TO ANY DUE PROCESS SAFEGUARDS SUCH AS DEFENDANTS HAVING (3) DAYS TO REWRITE THE TICKET, (8) DAYS TO SERVE HIM THE TICKET & (14) DAYS TO HEAR THE TICKET. HE SAYS "THIS IS TO BE DONE IN A TIMELY MANNER, & THIS DOES NOT FALL UNDER DR504.80.

46.) ONCE THE TICKET WAS DISMISSED & ORDERED TO BE REHEARD & REWRITTEN, PLAINTIFF'S STATUS BECAME TEMPERARY CONFINEMENT & HE CAN'T BE HELD IN THIS STATUS INDEFINITELY, HE HAS TO BE GIVEN A TICKET OR PLACED UNDER INVESTION STATUS WHICH WOULD GIVE THEM (30) DAYS TO DECIDE WHAT THEY WANT TO DO, BUT THEY CAN NOT VOID PLAINTIFF'S DUE PROCESS RIGHTS & HOLD HIM OVER (3) DAYS WITHOUT WRITING HIM A DISCIPLINARY TICKET, OR (8) DAYS WITHOUT SERVING HIM THE TICKET & THIS IS EXACTLY WHAT HAPPENED TO PLAINTIFF THE TICKET WAS WRITTEN (8) DAYS LATER & SERVED (9) DAYS LATER.

47.) Plaintiff was held in seg. on a void ticket that violated his constitutional rights to due process & as a direct result of his rights being intentionaly violated by all the listed defendants plaintiff was subjected to cruel & unusual punisament & unnecessary pain & suffering ...

CLAIM # 2 — Conditions of Confinement Cruel & Unusual Punisament ...

48.) Menard is an Illinois Department of Corrections facility that is old & run down & falling apart due to it being built in 1878.

49.) Menard is over crowded beyond capacity & as a result of the over crowding Menard is unable to function & be adequate.

50.) Due to overcrowding the cells are doubled up without regard to the safety of either inmates life or their health & well being, fights occur all the time as a result of this deliberate disregard for inmate safety due to overcrowding conditions.

51.) Plaintiff was placed in a cell in segregation without sheets, pillow case, toilet paper, soap, toothpaste, toothbrush or a change of underclothes. He was unable to take care of his personal hygiene, brush his teeth or change his clothes.

52.) Plaintiff was placed in a cell that had no hot water & the toilet didn't work. The cold water dripped out & wouldn't flow out like it was suppose to, he couldn't wash himself up like everyone else.

53.) Plaintiff was placed in a cell that had feces & blood smeared all on the walls putting him in jeopardy of catching hepatitis or some other disease thats passed thru the contact of blood & feces (bodily fluids).

54.) Plaintiff wasn't given any cleaning supplies to clean his cell even though he asked for it almost every single day & showed the gallery officer the condition of his cell.

55.) Per Warden Butler Menard no longer passed out soap to inmates & was the reason that no

Cleaning Supplies were *not* being passed out on a daily or weekly basis.

56.) Cells are suppose to be inspected daily to make sure that they are in working order — have running water (Hot & Cold), a working & functioning toilet to dispose of bodily waste & Warden Butler is suppose to order these inspections to be done or appoint someone to make sure that they are done so that the states carcereal burden/obligation is fullfilled for providing adequate shelter & access to water & adequate plumming for sanitation disposal.

57.) Butler is the warden & she may not be apart of the day to day operations but she can't ignore when she's been notified about these day to day problems, at the least... she has to tell someone else to fix the problem or notify the person she already has in place to address problems of that nature... because if she's constantly being told about these issues, then that means someone's not doing their job.

58.) Plaintiff was housed in North 2 segregation & there was ants, roaches & mice running around in the cells. It was infested back there all in his property & on his bed & coming out the cracks on the side of the toilet, & flies & gnats were in the showers.