IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIQUION CLAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16−cv−0612−SMY |
| | ) |
| KIMBERLY BUTLER, | ) |
| RICHARD FERRELL, | ) |
| ROBERT DIXON, | ) |
| BRANDON ANTHONY, | ) |
| MARVIN BOCHANTIN, | ) |
| KENT BROOKMAN, | ) |
| JASON HART, | ) |
| LINDA CARTER, | ) |
| SHERRY BENTON, and | ) |
| SALVADOR GODINEZ | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff, an inmate at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks monetary and injunctive relief for violations of his constitutional rights that arose when Plaintiff was disciplined without due process. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>   (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

1

>       (2) seeks monetary relief from a defendant who is immune from
>       such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. However, the factual allegations of a *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff was put on investigative status and sent to segregation around July 15, 2014. (Doc. 1, p. 5). As part of the transfer, Defendant Anthony conducted a search of Plaintiff's property and discovered a photo album that had security threat group ("STG") information hidden behind the pictures. (Doc. 1, p. 5). Anthony claimed to have found the album in Plaintiff's correspondence box. (Doc. 1, p. 5). Nagel allegedly witnessed the search. (Doc. 1, p. 5). Plaintiff was never issued a shakedown slip for the search. (Doc. 1, p. 5).

Plaintiff was issued a disciplinary ticket. (Doc. 1, p. 6). Defendants Ferrell and Dixon made up the adjustment committee that heard Plaintiff's ticket on July 21, 2014. (Do. 1, p. 7). Ferrell and Dixon did not consider the STG letters themselves; they only considered the disciplinary report written by Anthony. (Doc. 1, p. 7). Plaintiff was not permitted to review the correspondence himself, and was therefore unable to put on a defense. (Doc. 1, p. 8). Although Plaintiff was permitted to submit a written statement, it was not made part of the record of the adjustment committee. (Doc. 1, p. 8-9). As a result of Ferrell and Dixon only taking Anthony's word into consideration, they found Plaintiff guilty and sentenced him to 6 months C-grade, 6 months segregation, 6 months commissary restrictions and 6 months contact visit restrictions. (Doc. 1, p. 8).

After Plaintiff was convicted of the disciplinary charge, he filed a grievance alleging that the dates on his ticket were incorrect. (Doc. 1, p. 9). The adjustment committee report reflects that the disciplinary ticket was dated July 3, 2014, but Plaintiff alleges that the ticket was not written until July 15, 2014. (Doc. 1, p. 9). Grievance Officer Linda Carter remanded the disciplinary ticket back to internal affairs to rewrite it with the correct dates. (Doc. 1, p. 10). Plaintiff was also given another hearing by the adjustment committee. (Doc. 1, p. 10). Defendant Butler agreed with this disposition on October 14, 2014. (Doc. 1, p. 10). Plaintiff's ticket was not re-written until more than a week later on October 21, 2014. (Doc. 1, p. 11). The revised ticket was heard on October 28, 2014. (Doc. 1, p. 12).

Defendants Brookman and Hart made up the adjustment committee during the second hearing. (Doc. 1, p. 13). Once again, they refused to allow Plaintiff to examine the evidence against him. (Doc. 1, p. 13). Brookman and Hart also told Plaintiff that they had not personally examined the evidence and that they would rely on Anthony's report. (Doc. 1, p. 13-14).

3

Brookman and Hart gave Plaintiff the same sentence he had before. (Doc. 1, p. 14). The adjustment committee report on the second hearing also failed to correct the mistaken date, and continued to list the disciplinary report as having been issued on July 3, 2014. (Doc. 1, p. 15). Plaintiff filed grievances on the outcome of this hearing with Defendant Carter and Bochantin. (Doc. 1, p. 16).

Plaintiff alleges that he was sent to segregation and placed in a cell without sheets, pillow cases, toilet paper, soap, tooth paste, tooth brush or a change of clothes. (Doc. 1, p. 20). Plaintiff's cell lacked hot water and the cold water did little more than drip. (Doc. 1, p. 20). The toilet in the cell did not work. (Doc. 1, p. 20). There were also blood and feces smeared on the wall. (Doc. 1, p. 20). Plaintiff was not given cleaning supplies for his cell, despite asking for them repeatedly. (Doc. 1, p. 20). Plaintiff also saw ants, roaches and mice in his cell, as well as flies and gnats in the shower. (Doc. 1, p. 21). The cells are also extremely hot in the summer and as a result of the low water pressure in his cell, Plaintiff had no way to keep cool. (Doc. 1-1, p. 1). As a result, Plaintiff suffered symptoms of dehydration, including headaches, tiredness, cramps, vomiting and sleeplessness. (Doc. 1-1, p. 1). Defendants Butler and Godinez ordered large fans placed on the gallery, which caused loud and severe noise without cooling the cells. (Doc. 1-1, p. 1). It was impossible to sleep with the fans on.

Based on the allegations of the Complaint, the Court finds it convenient to divide Plaintiff's *pro se* action into four counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review

**COUNT 1:** Dixon, Ferrell, and Butler violated Plaintiff's due process rights when they found him guilty of a disciplinary ticket on July 21, 2014

>   **COUNT 2:**   Brookman, Hart, and Butler violated Plaintiff's due process rights when they upheld the original decision of the first adjustment committee hearing on October 28, 2014
>   **COUNT 3:**   Butler and Godinez violated Plaintiff's rights under the Eighth Amendment by subjecting him to unconstitutional conditions of confinement in segregation.

Plaintiff's Complaint contains another claim, but for the reasons explained below, the following counts do not survive threshold review and will be **DISMISSED with prejudice**.

>   **COUNT 4:**   Anthony violated Plaintiff's due process rights by failing to issue Plaintiff a shakedown slip while searching his property on July 15, 2014
>
>   **COUNT 5**:   Butler, Godinez, Carter, Bochantin, and Benton interfered with Plaintiff's access to Courts when they failed to adequately respond to grievances he filed.

### DISCUSSION

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of

5

the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

Additionally, prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Here, Plaintiff has alleged that he was exposed to conditions, discussed more fully below, that implicate a liberty interest. He has further alleged that there were procedural and substantive problems with both of his disciplinary hearings. Specifically, he did not have a chance to review the evidence against him and the prison did not follow IDOC timelines and policies in issuing the ticket. He has also alleged that the prison recognized an irregularity with the first ticket, but did

not correct the error at the second disciplinary hearing. This is sufficient to survive threshold review, and **Count 1 and Count 2** will be permitted to proceed at this time.

As to **Count 3**, Plaintiff has both alleged that the conditions of confinement that he was exposed to were sufficiently terrible to implicate a liberty interest and that they violated the Constitution. Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also*

*McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994).  In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994).  The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm.  *Farmer*, 511 U.S. at 842.

In the case currently before the Court, Plaintiff was sent to disciplinary segregation for approximately 6 months.  He has alleged that while in segregation at Menard, he was exposed to blood, feces, 24 hour noise, heat, lack of water, vermin and lack of cleaning supplies.  These allegations are sufficient to state a conditions of confinement claim, and **Count 3** will be permitted to proceed.

Turning now to **Count 4**, this claim must be dismissed.  Plaintiff has alleged that Defendant Anthony did not issue him a shakedown slip for the search of his property.  *See* Ill. Admin. Code tit. 20, § 501.220(b)(6).  The due process clause of the Fourteenth Amendment provides that the states shall not "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV.  However, there is no loss of property without due process of law if a state provides an adequate post-deprivation remedy for the loss.  *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *Parratt v. Taylor,* 451 U.S. 527, 540 (1981) (quoting *Mitchell v. W.T. Grant Co.,*

416 U.S. 600, 611 (1974)) (noting the "usual rule" that "[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate."), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986); *Easter House v. Felder,* 910 F.2d 1387, 1396 (7th Cir.1990) (quoting *Parratt,* 451 U.S. at 541) (stating that "deprivations of property resulting from 'random and unauthorized' acts of state actors do not constitute a violation of the procedural requirements of the fourteenth amendment due process clause if a meaningful post-deprivation remedy for the loss is available.").

The United States Court of Appeals for the Seventh Circuit has specifically held that an IDOC prisoner has an adequate post-deprivation remedy for both a confiscation of the prisoner's non-contraband property by IDOC personnel and a failure to issue the prisoner a shakedown slip for the confiscated property in the form of an action for damages in the Illinois Court of Claims. *See Murdock v. Washington,* 193 F.3d 510, 513 (7th Cir.1999) (citing 705 ILCS 505/8); *Stewart v. McGinnis,* 5 F.3d 1031, 1035–36 (7th Cir.1993). Therefore, Plaintiff has failed to state a cognizable claim under 42 U.S.C. § 1983 for a violation of his Fourteenth Amendment rights.

Turning now to **Count 5**, this claim must also be dismissed. Plaintiff has alleged that the grievance process did not adequately function. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). While the Seventh Circuit has recently clarified in *Perez v. Fenoglio* that grievances may provide sufficient

proof that a defendant both knew of a serious condition and approved, condoned, or turned a blind eye to a failure to address it in a medical deliberate indifference claim, 792 F.3d 768, 781-82 (7th Cir. 2015), the grievance process standing alone does give rise to a constitutional violation.

**Count 5** must fail against Defendant Benton because Plaintiff is not alleging that she should have intervened in his due process or conditions of confinement claims; Plaintiff has only alleged that Benton improperly rejected his grievance for being untimely when Plaintiff's evidence showed that the delay was due to the mailroom. But rejecting a grievance for untimeliness does not implicate her in either Plaintiff's due process claims or his conditions of confinement claim. Plaintiff will have the opportunity to litigate whether the denial was proper during this litigation if and when the Defendants raise the exhaustion defense. However, Benton's denial does not state a stand-alone claim.

As to the other Defendants, the same analysis applies. Plaintiff has named Defendants Carter and Bochantin, who are grievance officers at Menard, in this count. Plaintiff's allegations against Carter and Bochantin are not that they knew about the allegedly deficient conditions of confinement or the alleged due process violations, but that they "deliberately hindered [Plaintiff] from being able to exhaust [his administrative remedies] by limiting what was made available to him," and that "turned a blind eye to the deliberately understaffed mailroom's inadequacies," which caused Benton to reject Plaintiff's appeal. (Doc. 1, p. 5-6). Neither of those allegations states a claim because Plaintiff is not alleging that Carter and Bochantin approved and refused to intervene in the other constitutional violations that he complains of, but that their work in processing grievances was deficient.

As to Defendants Butler and Godinez, the Seventh Circuit has only found that the grievance process can show the requisite state of mind in a deliberate indifference claim. Deliberate indifference is an element of a conditions of confinement claim, but it is not part of a due process claim. Both Butler and Godinez are already named in Plaintiff's conditions of confinement claim, and Plaintiff's claim here would be based on the same conduct and duplicative. The grievance process does not create a free standing claim in addition to the conditions of confinement claim already pled. Therefore **Count 5** will be dismissed **with prejudice**.

### DISPOSITION

**IT IS ORDERED** that **Counts 4** and **5** shall be **DISMISSED with prejudice.** That means that Defendants Anthony, Benton, Carter, and Bochantin are also **DISMISSED with prejudice** as Plaintiff has stated no other claims against them.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Butler, Ferrell, Dixon, Brookman, Hart and Godinez: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the

Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Phillip M. Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 5, 2016**

**s/ STACI M. YANDLE**
**U.S. District Judge**
